UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD R. SELF,

                                    Plaintiff,
                                                        9:10-CV-1463
v.                                                      (GTS/TWD)

THOMAS LAVALLEY, et al.,

                                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

DONALD R. SELF, 95-B-2539
Plaintiff *pro se*
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. ERIC T. SCHNEIDERMAN                         KRISTA A. ROCK, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff

Donald R. Self alleges that he was denied prison jobs and programming and that a weapon was

planted in his cell after he filed grievances. Currently pending before the Court are Defendants'

motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)

(Dkt. No. 20) and Plaintiff's motion to amend the complaint (Dkt. No. 24). For the reasons that follow, I deny Plaintiff's motion to amend without prejudice and recommend that Defendants' motion to dismiss be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff has been a prisoner at Great Meadow Correctional Facility since 1996. (Dkt. No. 1 at 6 ¶ 17.) In 1997, Plaintiff was moved to the honor block and remained there for twelve years without a single disciplinary report. *Id.* ¶ 21.

Plaintiff was placed in a vocational class for drafting and served as the instructor's teaching assistant for thirteen years. *Id.* ¶ 18. In April or May 2009, the instructor retired. *Id.* ¶ 22. Plaintiff asked the instructor to put in a good word for him so he could get an upstairs hospital porter job. *Id.* The instructor did. *Id.* The instructor later told Plaintiff that Plaintiff had been denied the job because of his commitment offense. *Id.* at 7 ¶ 23. The instructor suggested that Plaintiff raise the issue with the Program Committee. *Id.*

Plaintiff went before the Program Committee on or about March 11, 2009. *Id.* ¶ 24. Defendant Sergeants Andy Frazier and Ron Atkinson headed the committee that day. *Id.* Defendants Frazier and Atkinson told Plaintiff that Defendant Sergeant Rory Birrell, the security advisor to the Program Committee, was blocking Plaintiff from receiving the upstairs hospital porter job because of Plaintiff's commitment offense. *Id.* ¶ 25. They told Plaintiff they would look into it and get back to Plaintiff as soon as possible. *Id.* ¶ 26.

Plaintiff was called back to the Program Committee several times and told that the matter would be looked into. *Id.* ¶ 27. At some point in the process, Defendant Captain Stephen Rowe was called for a security check and clearance. *Id.* He never reported back to either Plaintiff or

the Program Committee about why Plaintiff was being denied programs based solely on his commitment offense.  *Id*. at 8 ¶ 28.

Defendant Birrell "kept denying [P]laintiff jobs."  *Id*.  At a Program Committee meeting, he told Plaintiff that he would not get the hospital job or any other job unless Defendant Birrell saw fit.  *Id*. ¶ 29.  When asked to explain his statement, Defendant Birrell said "I don't like what you['re] in prison for [and] the fact you were a gang leader of a bunch of white kids doesn't help."  *Id*.  Plaintiff told Defendant Birrell that he would be filing a formal grievance against him.  *Id*. ¶ 30.  Defendant Birrell told Plaintiff that it "wouldn't be in [P]laintiff's best interest to do that."  *Id*.  When Plaintiff filed the grievance, it was not processed.  *Id*.  After Plaintiff filed the grievance, Defendant Atkinson told Plaintiff that he would be removed from the drafting class payroll.  *Id*.  However, Defendant Atkinson did not remove Plaintiff from the payroll "to try and appease [P]laintiff in order to quiet what was happening."  *Id*.

Plaintiff sought the help of another inmate to get a job in the law library.  *Id*. at 9 ¶ 31.

On September 21, 2009, Plaintiff filed a grievance against Defendant Birrell.  *Id*. ¶ 32.  Plaintiff alleges that it is a "known practice" at Great Meadow to make staff members aware when a prisoner files a grievance, "which leaves the inmate in a bad position to be harmed[,] harassed or set up with a weapon."  *Id*. at 10 ¶ 34.

On September 28, 2009, Defendant S. Hahn found a weapon in Plaintiff's cell during a random search.  (Dkt. No. 1 at 9 ¶ 32; Dkt. No. 1-1 at 41.)  Plaintiff's cell had not been subject to a random search since Plaintiff moved to the honor block in 1997.  (Dkt. No. 1 at 9 ¶ 32.)

After the weapon was discovered, Plaintiff was escorted to the Sergeant's Office.  *Id*. ¶ 33.  There, Defendant Birrell and others "teased and taunted" Plaintiff and "made comments

about [P]laintiff's grievance against [Defendant] Birrell." *Id*. Defendant Birrell used the office computer to show Plaintiff's commitment offense to the others. *Id*. Defendant Birrell asked where Plaintiff was working, then became infuriated and "proceeded to fling more insults at [P]laintiff." *Id*. After a short time, Plaintiff was escorted back to his cell. *Id*.

Defendant Hahn issued a misbehavior report charging Plaintiff with possessing a contraband weapon. (Dkt. No. 1-1 at 41.) After a hearing, Plaintiff was sentenced to ninety days in keeplock. (Dkt. No. 1 at 10 ¶ 35.)

Sometime after Plaintiff was released from keeplock, he complained to Defendant Atkinson about the way Defendant Birrell was treating him. *Id*. Plaintiff alleges that Defendant Atkinson "covered for [Defendant Birrell] by writing unt[ru]e reports" about Plaintiff. *Id*.

On January 21, 2010, Plaintiff wrote to Defendant Superintendent Thomas LaValley to complain about Defendant Birrell. (Dkt. No. 1 at 10 ¶ 36; Dkt. No. 1-2 at 29-31.) Plaintiff stated that he was "being kept by him and him alone from the law library which is woefully understaffed. This is not the first incident with him when it comes to jobs and my crime. He has mis[]used personal information dealing with me and has told other staff about this information." (Dkt. No. 1-2 at 30.) When Defendant LaValley did not respond, Plaintiff filed a grievance against him. (Dkt. No. 1 at 10 ¶ 36; Dkt. No. 1-2 at 32.)

On February 1, 2010, Plaintiff talked with Defendant Birrell at a Program Committee meeting "about the discrimination." (Dkt. No. 1 at 11 ¶ 37.) Two days later, Plaintiff's cell was searched. *Id*. No contraband was found. (Dkt. No. 1-2 at 34.) Plaintiff alleges that the search "was done to send [P]laintiff a warning that it could be done again. Plaintiff soon thereafter stopped writing grievance[s] on [Defendant] Birrell." (Dkt. No. 1 at 11 ¶ 37.)

In February and March 2010, Defendant Atkinson denied Plaintiff permission to work in the law library due to his "recent history of weapon possession." (Dkt. No. 1-2 at 26-27.) After Plaintiff filed grievances against Defendant Atkinson, he and Defendant Frazier "tried to circumvent the grievance process once again by giving [P]laintiff a program knowing what [Defendant] Birrell would do. The defendant[s] insisted that [P]laintiff had no choice and that [P]laintiff would be written up for disobeying a direct order, then placed on limited privileges and confined on B-Block 2 Gall[e]ry [un]til[] [P]laintiff complied with defendant[s'] orders. Plaintiff was given Soapshop Warehouse and Tarbiyah [] (an Islamic class)". (Dkt. No. 1 at 11 ¶ 39.)

Plaintiff was scheduled to start the new program on the Monday after it was assigned. *Id.* ¶ 40. However, he received a callout to appear before the Program Committee that day. *Id.* Defendant Birrell was there with Defendants Atkinson and Frazier. *Id.* at 12 ¶ 41. Defendant Birrell took Plaintiff's program card and told Plaintiff to wait outside. *Id.* Once Plaintiff was outside, Defendant Birrell "began to give [Defendant] Atkinson a stern reprimand . . . for giving [P]laintiff a job." *Id.* Plaintiff was then called back into the room. *Id.* Defendant Birrell ripped up Plaintiff's program card and issued Plaintiff a new one that listed only recreation and Tarbiyah. *Id.*

Plaintiff filed his complaint in this Court on December 6, 2010. (Dkt. No. 1.)

## II. MOTION TO DISMISS

Defendants move to dismiss the complaint. (Dkt. No. 20.) Plaintiff has opposed the motion. (Dkt. No. 29.) Defendants have filed a reply. (Dkt. No. 30.)

**A.      Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.     Analysis**

1.     <u>Official Capacity Claims</u>

The caption of the complaint names Defendants in their "Individual and Official Capacities." (Dkt. No. 1 at 1.) Defendants argue that the claims against them in their official capacities are barred by the Eleventh Amendment. (Dkt. No. 20-1 at 2-3.[1]) Defendants are correct.

The Eleventh Amendment states that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Sovereign immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

The Eleventh Amendment bars suits for damages against state officials acting in their

---

[1]     Citations to pages in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

official capacities.[2]  Here, all Defendants are all DOCS employees.  All DOCS employees are state officials for the purposes of the Eleventh Amendment.  *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 WL 1154311, at \*2 (S.D.N.Y. Aug. 14, 2000)("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.").  Accordingly, Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment.  Therefore, I recommend that the Court grant Defendants' motion to dismiss these claims.[3]

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not

---

[2]     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at \*4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) (citing cases).

[3]     I have reviewed Plaintiff's argument regarding this issue (Dkt. No. 29 at 11-12), and note for his benefit that his claims for damages, injunctive relief, and declaratory relief may proceed against Defendants in their individual capacities if those claims survive dispositive motions on the merits.

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id*. at 112 (citation omitted). Here, better pleading would not cure the problem with Plaintiff's official capacity claims. Therefore, I recommend that the Court grant the motion to dismiss these claims without leave to amend.

2. <u>Constitutional Right to a Particular Job, Program, Parole, or Facility</u>

Plaintiff alleges that Defendants violated his constitutional rights by refusing to give him a prison job based on his commitment offense. (Dkt. No. 1.) He further alleges that his disciplinary keeplock sentence and removal from the honor block program could have "serious adverse [e]ffect(s) at [P]laintiff's future Parole Board hearing." (Dkt. No. 1 at 13 ¶ 43.) He requests an injunction prohibiting Defendants from transferring him to another facility. *Id*. at 19. Defendants move to dismiss these claims, arguing that prisoners do not have any constitutional right to parole or to particular jobs, programs, or facility placements. (Dkt. No. 20-1 at 3-4.) Defendants are correct.

A prisoner in a New York State correctional facility "has no protected liberty interest in a particular job assignment." *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996). Prisoners do not have a constitutional right to participate in prison programs. *Thompson v. LaClair*, No. 9:08-CV-37, 2008 U.S. Dist. LEXIS 4467, at *11-12, 2008 WL 191212, at *4 (N.D.N.Y. Jan. 22,

2008) (Scullin, J.)[4] (citing *Gissendanner v. Menifee*, 975 F. Supp. 249, 251 (W.D.N.Y. 1997)).

Prisoners in New York State do not have a liberty interest in being released on parole. *Graziano*

*v. Pataki*, 689 F.3d 110, 114-15 (2d Cir. 2012); *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir.

2001); *Farid v. Bouey*, 554 F. Supp. 2d 301, 321 (N.D.N.Y. 2008). Finally, prisoners "have no

right to choose their prison, and the discretion of prison officials to transfer inmates as they see

fit is extremely broad. " *Rosenberg v. Meese*, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985).

Therefore, I recommend that the Court grant Defendants' motion to dismiss Plaintiff's claims

that he is entitled to a particular job, program, facility, or parole. Better pleading would not cure

these deficiencies and I accordingly recommend that the Court dismiss the claims without leave

to amend.

3.     Verbal Harassment

Plaintiff alleges that Defendant Birrell verbally harassed him on several occasions. (Dkt.

No. 1 at 8-9 ¶¶ 29, 33.) Defendants argue that this claim should be dismissed because allegations

of verbal harassment are not actionable under 42 U.S.C. § 1983. (Dkt. No. 20-1 at 5.)

Defendants are correct.

Verbal harassment, in and of itself, does not rise to the level of a constitutional violation.

*Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010); *Ramirez v. Holmes*, 921 F.

Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury

or damage, do not state a claim under 42 U.S.C. § 1983."). Therefore, I recommend that the

Court dismiss Plaintiff's claims of verbal harassment against Defendant Birrell without leave to

---

[4]     Defendants provided Plaintiff with a copy of this unpublished decision with their
moving papers. (Dkt. No. 20-2 at 3-7.)

amend.

> 4. Misbehavior Reports

Plaintiff claims that Defendant Hahn filed a false misbehavior report charging Plaintiff with possessing a contraband weapon. (Dkt. No. 1-1 at 41.) Plaintiff also claims that Defendant Atkinson wrote untrue reports about him. (Dkt. No. 1 at 10 ¶ 35.) Defendants move to dismiss these claims, arguing that "an inmate has no constitutional claim against correctional staff for allegedly issuing a false misbehavior report . . . ." (Dkt. No. 20-1 at 5-6.) Defendants misstate the law. A prisoner's claim that a correctional officer filed a false misbehavior report may implicate two separate constitutional provisions: (a) the Fourteenth Amendment right to procedural due process; or (b) the right not to be retaliated against for exercising First Amendment rights such as the right of access to the courts or the right to petition the government for redress of grievances. *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986); *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988); *Jones v. Coughlin*, 45 F.3d 677 (2d Cir. 1995). I will address these claims separately.

> a. *Due Process*

In the procedural due process context, the Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he *does* have "the right not to be deprived of a protected liberty interest without due process of law." *Freeman*, 808 F.2d at 951. Where a prisoner is falsely accused of violating disciplinary rules, and a hearing is held on the allegedly false charges that comports with the procedural due process standards set forth by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and any resulting guilty finding

is based on "some evidence," the correctional officer's filing of unfounded charges does not give rise to procedural due process liability. *Freeman*, 808 F.2d at 953-54.

Here, Plaintiff's complaint does not allege any facts plausibly suggesting that the disciplinary hearing arising from Defendant Hahn's misbehavior report violated the *Wolff* standards or that the hearing officer's decision was not based on "some evidence." The complaint does not allege that Plaintiff received any discipline as a result of the reports filed by Defendant Atkinson, much less that any such discipline was imposed without due process. Therefore, I recommend that the Court dismiss Plaintiff's due process claims regarding the reports filed by Defendants Hahn and Atkinson with leave to amend.

b.      *Retaliation*

In the retaliation context, "[a]n allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right ... states a claim under § 1983. A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea*, 313 F.3d 677, 681 (2d Cir. 2002)(citations omitted).

i.      Defendant Hahn

In order to state a retaliation claim against Defendant Hahn, Plaintiff must first allege

facts plausibly suggesting that Defendant Hahn wrote the misbehavior report in retaliation for Plaintiff's exercise of a constitutionally protected right. Plaintiff alleges that Defendant Hahn filed the misbehavior report "for the sole purpose of pun[i]tive retaliation to dissuade [P]laintiff from further and future complaints against fellow staff . . . ." (Dkt. No. 1 at 14 ¶ 45.) The filing of a grievance against prison officials is constitutionally protected conduct. *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). Thus, Plaintiff has alleged sufficient facts to state a claim as to the first element. Indeed, Defendants concede that Plaintiff's "actions in filing a grievance constitutes an activity protected by the First Amendment." (Dkt. No. 20-1 at 13.)

Second, Plaintiff must allege facts plausibly suggesting that his protected conduct was a substantial or motivating factor in Defendant Hahn's decision to issue a misbehavior report. As Plaintiff correctly notes (Dkt. No. 29 at 6[5]), several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73).

Here, Plaintiff alleges that Defendant Hahn wrote the misbehavior report one week after Plaintiff filed a grievance against Defendant Birrell. (Dkt. No. 1 at 9 ¶ 32; Dkt. No. 1-1 at 41.)

_____

[5]     Citations to pages in Plaintiff's opposition to the motion to dismiss refer to the page numbers assigned by the Court's electronic filing system.

The Second Circuit has held that the passage of "only six months" between protected activity and an adverse action is sufficient to support an inference of a causal connection. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)). Thus, the first factor plausibly suggests that Plaintiff's protected conduct was a motivating factor in Defendant Hahn's decision to issue a misbehavior report.

Plaintiff alleges that he did not receive a single disciplinary report between the time he was moved to the honor block in 1997 and the date Defendant Hahn issued his report. (Dkt. No. 1 at 6 ¶ 21.) Thus, the second factor plausibly suggests that Plaintiff's protected conduct was a motivating factor in Defendant Hahn's decision to issue a misbehavior report.

Plaintiff admits that he was not vindicated at the disciplinary hearing. *Id*. at 10 ¶ 35. He has not alleged any statements by Defendant Hahn concerning his motivation. Therefore, the third and fourth factors do not plausibly suggest that Plaintiff's protected conduct was a motivating factor in Defendant Hahn's decision to issue a misbehavior report. The factors are thus evenly split between those that suggest that Plaintiff's protected conduct was a motivating factor and those that do not. In light of the special solicitude that the Court must grant to *pro se* civil rights litigants and the additional fact that Plaintiff alleges that Defendant Birrell taunted him about his grievances immediately after Defendant Hahn discovered the contraband, I find that Plaintiff has alleged facts plausibly suggesting that Defendant Hahn was motivated to file the misbehavior report by Plaintiff's protected conduct.

The burden thus shifts to Defendants to show that Plaintiff would have received the same punishment even absent the retaliatory motivation. Defendants have not met this burden. As discussed above, Defendants did not address this claim under a retaliation framework at all.

Rather, Defendants simply asserted that prisoners have no constitutional right to be free of false misbehavior reports. Although Defendants briefly address retaliation in another section of their Memorandum of Law, they assert there that Plaintiff "has failed to show that any defendant was actually involved in the alleged retaliation." (Dkt. No. 20-1 at 13.) Therefore, I recommend that the Court deny Defendants' motion to dismiss the claim against Defendant Hahn regarding the September 28, 2009, misbehavior report.[6]

### ii.    Defendant Atkinson

Plaintiff alleges that Defendant Atkinson wrote untrue reports to "cover[] for [Defendant] Birrell." (Dkt. No. 1 at 10 ¶ 35.) Construed broadly, Plaintiff may be alleging that Defendant Atkinson retaliated against him for filing a grievance against Defendant Birrell. However, Plaintiff has not alleged any facts plausibly suggesting a causal connection. The complaint does not allege when Defendant Atkinson filed the false reports, so the Court cannot find that temporal proximity suggests a causal connection. Plaintiff has not alleged that he was vindicated at a hearing or that Defendant Atkinson made any statements suggesting a retaliatory motive. Therefore, I recommend that the Court dismiss Plaintiff's retaliation claim against Defendant Atkinson with leave to amend.

### 5.    Cell Searches

Plaintiff claims that Defendants violated his constitutional rights by searching his cell on

---

[6]    Defendants cursorily argue that they are entitled to qualified immunity regarding retaliation because Plaintiff "cannot demonstrate that the defendants in any way . . . subjected him to retaliation." (Dkt. No. 20-1 at 18.) Defendants' qualified immunity argument thus simply reiterates Defendants' argument on the merits of the retaliation claim. Because I find that Plaintiff has stated a retaliation claim against Defendant Hahn, I recommend that the Court reject Defendants' assertion of the qualified immunity defense at this time.

September 28, 2009, and February 3, 2010.  (Dkt. No. 1 at 9, 11 ¶¶ 32, 37.)  Defendants move to dismiss this claim, arguing that retaliatory cell searches are not actionable under 42 U.S.C. § 1983.  (Dkt. No. 20-1 at 6.)  Defendants are correct.  Prisoners cannot assert Fourth Amendment claims regarding cell searches, even where the search is retaliatory or arbitrary.  *DeMaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.").  Therefore, I recommend that the Court dismiss Plaintiff's claims regarding the cell searches without leave to amend.

6. <u>Personal Involvement</u>

Plaintiff has named Thomas LaValley (Superintendent of Great Meadow), Karen LaPolt (Deputy Superintendent of Programs), and Stephen Rowe (Captain of Corrections) as Defendants.  (Dkt. No. 1 at 1.)  Defendants move to dismiss the claims against these Defendants, arguing that the complaint does not sufficiently allege that they were personally involved in any constitutional violation.  (Dkt. No. 20-1 at 7-9.)  Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431,

435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210

(2d Cir. 1985) (per curiam).  In other words, supervisory officials may not be held liable merely

because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Rather, supervisory personnel may be considered personally involved if they (1) directly

participated in the violation, (2) failed to remedy that violation after learning of it through a

report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation

occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or

(5) exhibited deliberate indifference to the rights of inmates by failing to act on information

indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]

Here, the complaint alleges that Defendant LaValley failed to respond to Plaintiff's

complaints about Defendant Birrell.  (Dkt. No. 1 at 10 ¶ 36.)  Plaintiff argues in opposition to the

motion to dismiss that he "not only made [D]efendant Lavalley aware of said situation(s) but [

]wrote Lavalley himself up for not enforcing rules, regulations, and laws."  (Dkt. No. 29 at 9.)  A

prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to

establish that the official "failed to remedy that violation after learning of it through a report or

appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the

violation was occurring."  *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000).  *See*

---

[7]      In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the
underlying constitutional claim is a claim of intentional discrimination, a supervisory official's
liability must be judged by the official's purpose rather than the official's knowledge of
subordinates' actions or policies.  The Second Circuit has not yet issued a decision discussing
*Iqbal*'s effect on the *Colon* categories.  Several district courts in the Second Circuit have
determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v. United States*, 674 F.
Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  I will assume for the purposes of this
motion that *Colon* remains good law.

*also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). Therefore, I recommend that the Court dismiss the claims against Defendant LaValley with leave to amend.

Plaintiff alleges that Defendant LaPolt allowed "others under her control" to abuse Plaintiff. (Dkt. No. 1 at 15 ¶ 48.) In opposition to the motion to dismiss, Plaintiff argues that Defendant LaPolt "was . . . notified as to what was happening at the Program Committee, but failed to remedy or stop said wrongs of the Committee members . . . of which she is their direct supervisor . . . ." (Dkt. No. 29 at 9.) As discussed above, the only Defendant whose conduct arguably violated any constitutional provision is Defendant Hahn. Even read extremely broadly, the complaint does not allege facts plausibly suggesting Defendant LaPolt's personal involvement with that claim because it was a one-time incident. The second *Colon* category - that a supervisor is personally involved if he or she failed to remedy a violation after learning of it through a report or appeal - applies only to situations where an alleged violation is ongoing, not to situations involving a one-time violation. *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("It has been held that an appropriate guiding principle for determining personal responsibility is where a grievance alleges an ongoing constitutional violation, the supervisory official who reviews the grievance is personally involved if he is confronted with a situation that he can remedy directly. If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing

to remedy a violation.") (internal quotation marks and citations omitted); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate. Therefore, a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it. Similarly, liability may attach when a supervisor fails to act on reports of a staff member's previous assaults on the plaintiff and the plaintiff is assaulted again by that same staff member."). Therefore, I recommend that the Court dismiss the claims against Defendant LaPolt with leave to amend.

The complaint alleges that Defendant Rowe was assigned to do a security check and clearance on Plaintiff but failed to report back to the Program Committee. (Dkt. No.1 at 7-8 ¶¶ 27-28.) This allegation does not state facts plausibly suggesting that Defendant Rowe was personally involved in any constitutional violation. In opposition to the motion to dismiss, Plaintiff argues that Defendant Rowe "chose not to answer the plaintiff's letter or security phone calls made by Atkinson, instead choose to ignore and support the unlawful actions of those at the Program Committee." (Dkt. No. 29 at 10.) As discussed above, simply failing to respond to a grievance is insufficient to establish personal involvement. Therefore, I recommend that the Court dismiss the claims against Defendant Rowe with leave to amend.

6.     Constitutional Right to the Grievance Process

Defendants argue that to the extent that Plaintiff is asserting claims against them based entirely on failures to respond to his grievances, those claims should be dismissed. (Dkt. No. 20-1 at 9.) Defendants are correct. Prisoners do not have a due process right to a thorough

investigation of grievances.  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003).

> The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances.  *See Bill Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).  However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim.  *Cancel v. Goord*, No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001).  If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim.  *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).  "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983."  *Cancel*, 2001 WL 303713, at *3; *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y.2003); *Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 390 (W.D.N.Y. 1998).

*Shell v. Brzezniak,* 365 F. Supp. 2d 362, 369 -370 (W.D.N.Y. 2005).  Therefore, I recommend that the Court grant Defendants' motion to dismiss these claims without leave to amend.

### 7.    Access to Courts

Plaintiff asserts that Defendants violated his right to access the courts by "adversely affect[ing] [P]laintiff with combined punitive confinement of ninety days, including potential loss of good time, removal from Honor Block Program to a more restrictive cell block, the deprivation of all earned privileges, the mobility to attend religious services during said confinement, and the removal from assigned programs, and the serious adverse [e]ffect(s) at [P]laintiff's future Parole Board hearing."  (Dkt. No. 1 at 13 ¶ 43.)  Defendants argue that the complaint fails to state an access to the courts claim.  (Dkt. No. 20-1 at 11.)  Defendants are correct.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting

his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)).  This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F. Supp. 713, 725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer,* 503 F. Supp. 27, 28 (S.D.N.Y. 1980)).  To state a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).  As Defendants note, the complaint here does not allege that Plaintiff suffered any injury from the unspecified alleged interference with his access to the courts.  Indeed, Plaintiff concedes that this cause of action should be dismissed.  (Dkt. No. 29 at 3.)  Therefore, I recommend that the Court dismiss this claim without leave to amend.

8.     Fifth Amendment

Plaintiff alleges that Defendants violated his Fifth Amendment rights.  (Dkt. No. 1 at 13-15 ¶¶ 43-47, 50.)  Defendants argue that the Court should dismiss these claims because the Fifth Amendment applies only to federal actors.  (Dkt. No. 20-1 at 11.)  Defendants are correct.  The Fifth Amendment governs the actions of federal, not state, actors.  *Snow v. Vill. of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)).  None of the defendants in this action are federal actors.  Indeed, Plaintiff concedes that this cause of action should be dismissed.  (Dkt. No. 29 at 3.)  Therefore, I recommend that the Court dismiss Plaintiff's Fifth Amendment claims without leave to amend.

9.    <u>Procedural Due Process Claim Regarding Keeplock Confinement</u>

Plaintiff alleges that Defendants violated his rights under the Fourteenth Amendment. (Dkt. No. 1 at 13-15 ¶¶ 43-47, 50.)  Defendants argue that, to the extent that Plaintiff is raising a procedural due process claim regarding his ninety-day keeplock sentence, the claim should be dismissed.  (Dkt. No. 20-1 at 12-13.)  Defendants are correct.

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  An inmate has a liberty interest in remaining free from a confinement or restraint where the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

In the Second Circuit, determining whether a disciplinary confinement constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement."  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).  Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions."[8]  *Id.*  Here, Plaintiff has not alleged that the conditions he experienced in keeplock were more severe than normal SHU

---

[8]    "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week.  *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

conditions. Therefore, I recommend that the Court dismiss Plaintiff's procedural due process

claim regarding his keeplock confinement with leave to amend.

10.     <u>Plaintiff's Claim Regarding New York's Son of Sam Law</u>

Plaintiff argues that New York's Son of Sam Law violates the supremacy clause and that,

therefore, his victim's family is not entitled to any monetary award he wins in this lawsuit. (Dkt.

No. 1 at 17 ¶ 52.) Defendants argue that this claim should be dismissed because it is not ripe for

review. (Dkt. No. 20-1 at 14-16.) Defendants are correct. "[A]n Article III court cannot

entertain a claim which is based upon contingent future events that may not occur as anticipated,

or indeed may not occur at all." *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998)

(internal quotation omitted). Here, Plaintiff anticipates that he may receive a monetary award in

this action, but such an event is contingent at best. Plaintiff concedes that this cause of action

should be dismissed. (Dkt. No. 29 at 3.) Therefore, I recommend that the Court dismiss this

claim without leave to amend.

## III.    MOTION TO AMEND

In response to Defendants' motion to dismiss, Plaintiff filed a motion for leave to file an

amended complaint. (Dkt. No. 24.) The proposed amended complaint repeats the allegations of

the original complaint, adds some facts that occurred after the filing of the original complaint,

and adds claims that Defendants violated Plaintiff's right to equal protection, conspired against

him, denied him his right to practice his Muslim faith, and violated Plaintiff's Eighth

Amendment rights. (Dkt. No. 24-1.) Magistrate Judge George H. Lowe, to whom this action

was then assigned, issued a text order stating that Plaintiff's motion to amend would "be

addressed prior to consideration of the motion to dismiss." (Text Order Aug. 4, 2011.) This case

23

was reassigned to me on February 10, 2012.  (Dkt. No. 31.)  I am addressing the motion to amend concurrently with the motion to dismiss in the interest of judicial efficiency.

Generally, motions for leave to amend are analyzed pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993).  Elaborating on this standard, the Supreme Court has explained:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory move on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should be . . . 'freely given.'

*Foman*, 371 U.S. at 182; *accord Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("[Leave to amend] should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.").

In the Northern District of New York, a proposed amended complaint:

> must be a complete pleading, which will supercede the original pleading in all respects.  A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference.

> The motion must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.

L.R. 7.1(a)(4).  Failure to comply with this rule is a ground denying a motion to amend. *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 508 (N.D.N.Y. 2009).

Defendants argue that the Court should deny the motion to amend because Plaintiffs' proposed amended complaint does not comply with Local Rule 7.1(a)(4). (Dkt. No. 25 at 3-4.[9]) Further, Defendants argue that the proposed amendment would be futile because the "proposed amended complaint duplicates many of the claims set forth in [the] original complaint" and "suffer[s] from the same pleading deficiencies" discussed above. *Id*. at 5. Defendants are correct. The proposed amended complaint does not comply with the Local Rule. Further, as discussed above, many of the claims in the original complaint (which are repeated in the amended complaint) are subject to dismissal because they fail to state a claim upon which relief can be granted. Therefore, Plaintiff's motion for leave to file an amended complaint is denied without prejudice to the filing of a new amended complaint if the Court adopts this Report-Recommendation. Such an amended complaint should replead any causes of action that survive the motion to dismiss, omit the causes of action that the Court dismisses without leave to amend, and cure the deficiencies identified in the causes of action dismissed with leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 20) be **GRANTED IN PART AND DENIED IN PART**. It is recommended that the Court deny the motion to dismiss as to the retaliation claim against Defendant Hahn. It is recommended that the Court dismiss the following claims without leave to amend: (1) the claims against Defendants in their official capacities; (2) the claims that Defendants violated Plaintiff's rights by denying him a job or program and negatively impacting his chance at parole; (3) the

---

[9] Citations to pages in Defendants' opposition to the motion to amend refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

claim that Defendant Birrell violated Plaintiff's rights by verbally harassing him; (4) the Fourth Amendment claims regarding cell searches; (5) the claim that Plaintiff was denied the right to file grievances; (6) the access to courts claim; (7) the Fifth Amendment claim; and (8) the claim regarding New York's Son of Sam law.   It is recommended that the Court dismiss the following claims with leave to amend: (1) the procedural due process claims against Defendants Hahn and Atkinson; (2) the retaliation claim against Defendant Atkinson; (3) the claims against Defendants LaValley, LaPolt, and Rowe; and (4) the procedural due process claim regarding the keeplock confinement; and it is further

ORDERED that Plaintiff's motion to amend the complaint (Dkt. No. 24) is **DENIED WITHOUT PREJUDICE** to the filing of an amended complaint if the Court adopts this Report-Recommendation; and it is further

**RECOMMENDED** that the Court return the file to the undersigned to review any amended complaint filed by Plaintiff after the Court takes action on this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a).


Dated: December 27, 2012
      Syracuse, New York

                              Thérèse Wiley Dancks
                              United States Magistrate Judge